# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ANTHONY SETTIMO BARBUTO and
PATRICIA ANN MCCARTY,
Legal Guardian for Anthony Settimo Barbuto,

     Plaintiff,

                                       CASE NO.: 22-cv-569

v.

DANIEL HARTWIG, et al,

     Defendants.

## AMENDED COMPLAINT

For their Complaint, Plaintiffs ANTHONY SETTIMO BARBUTO, hereinafter referred to as "Barbuto", and PATRICIA ANN MCCARTY, hereinafter referred to as "McCarty", by and through their undersigned counsel, hereby state and allege as follows:

## I.     JURISDICTION

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. § 1331, § 1343, and § 1391(b); the Constitution of the United States; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367.

1

2. Defendants are residents of the State of Wisconsin. The acts complained of in this complaint occurred in Manitowoc, Wisconsin. Accordingly, venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §1391.

3. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Anthony Settimo Barbuto's rights as secured by the United States Constitution.

## II. PARTIES

**A. <u>Plaintiffs</u>**

4. Plaintiffs Anthony Settimo Barbuto and Patricia Ann McCarthy, are citizens of the United States, residents of the State of Wisconsin. At all times material hereto, Anthony Settimo Barbuto (hereinafter referred to as "Barbuto") was an inmate residing at the Manitowoc County Jail of the Manitowoc County Sheriff's Office, and was entitled to all rights, privileges, and immunities accorded all residents of Manitowoc County, the State of Wisconsin, and citizens of the United States, pursuant to the Constitution of the United States of America.

5. Plaintiffs seek damages for both compensatory damages and punitive damages.

**B. <u>Defendants</u>**

6. Defendant Manitowoc County is a municipal corporation, organized under the laws of the State of Wisconsin. Manitowoc County is a "person" for purposes of 42

2

U.S.C. § 1983 and a "public entity" under 42 U.S.C. § 12131(1). Manitowoc County owns and operates the Manitowoc County Jail. Acting through the Manitowoc County Sheriff's Office, the County is responsible for training, supervising, and disciplining jail employees; adopting, implementing, and enforcing jail policies and practices; and ensuring that jail conditions and the treatment of inmates complies with the United States Constitution and other federal, state, and local laws. The County is liable for the jail policies, practices, and customs that caused the harm alleged below. Under Wis. Stat. § 895.46(1)(a), the County is required to pay or indemnify all judgments, including for compensatory and punitive damages, attorneys' fees, and costs that may be awarded against its officials and employees.

7. Defendant Daniel Hartwig is the sheriff of Manitowoc County and had direct control over the management and operations of the Manitowoc County Jail at the time of Barbuto's incarceration at the Manitowoc County Jail. He was responsible for training, supervising, and disciplining jail employees; adopting, implementing, and enforcing jail policies and practices; and ensuring that jail conditions and the treatment of inmates complied with the United States Constitution and other federal, state, and local laws, as well as written jail policies. Under Wis. Stat. § 302.336(2), Defendant Hartwig is legally responsible for the confinement, maintenance, and medical care of all persons confined in the Manitowoc County Jail.

Case 1:22-cv-00569-WCG   Filed 12/07/22   Page 3 of 41   Document 26

8. Defendant, Joy Brixius is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant Brixius was employed by the MCSO as the Jail Administrator and was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including Barbuto. At all times material hereto, Defendant Brixius had oversight of the medical, clerical, correctional officers, and staff assigned to the jail facility. At all times material hereto, Defendant Brixius also oversaw, supervised, and had control over the management and operation of the entire Sheriff's Department, and was responsible for the MSCO's policies, procedures, and training. At all times material hereto, Defendant Brixius was aware of the MCSO's deficiencies, but took no action to remedy the deficiencies. At all times material hereto, Defendant Brixius was deliberately indifferent to the serious medical and psychological needs, as well as the Constitutional rights of Barbuto by ignoring the jail facility's staff's lack of sufficient training in policies and procedures, both written and unwritten, to adequately address Barbuto, and other inmates in need of medical and psychological care.

9. Defendant Sergeant _____ Campbell is a citizen residing in the State of Wisconsin. Defendant John Doe #1 was a sergeant in the Manitowoc County Jail and an employee of the Manitowoc County Sheriff's Office during the relevant time period. In that role he supervised correctional officers and had a duty to ensure that

4

jail conditions and the treatment of inmates complied with the United States Constitution and other federal, state, and local laws, as well as written jail policies. His duties involved inspecting the jail's segregation unit (1R) one or more times between June 14 and June 28, 2019.

10. Defendant Advanced Correctional Healthcare, Inc. ("Advanced"), upon information and belief, is an Illinois Corporation licensed to do business in the State of Wisconsin and has a principal business address at 3922 W. Baring Trace, Peoria, IL 61615. Upon information and belief, Advanced's registered agent in the State of Wisconsin is C T Corporation System, 301 S. Bedford Street, Suite 1, Madison, WI 53703. Advanced, upon information and belief, had a contract with Manitowoc County for the provision of medical services at the Manitowoc County Jail. Advanced is considered a "person" for purposes of 42 U.S.C. § 1983. Advanced acted under color of state law to provide medical and mental health services to inmates at the Manitowoc County Jail, pursuant to a contract with the County. Advanced was responsible for adopting, implementing, and enforcing policies and practices pertaining to medical and mental health care for Manitowoc County Jail inmates. Advanced also was responsible for ensuring that the care provided to those inmates met minimum constitutional and other legal standards and requirements.

11. Defendant Karen Ronquillo-Horton, M.D. is a citizen residing in the State of Wisconsin. Defendant Ronquillo-Horton was the medical director for the

Manitowoc County Jail and an employee of Advanced Correctional Healthcare, Inc. during the relevant time period. In that role, she was responsible for the health and welfare of inmates confined in the jail, including Barbuto.

12. Defendant Jane Doe #1, R.N. is a citizen residing in the State of Wisconsin. Defendant Jane Doe #1 was a nurse at the Manitowoc County Jail and an employee of Advanced Correctional Healthcare, Inc. during the relevant time period. In that role she was responsible for the health and welfare of inmates confined in the jail, including Barbuto.

13. Defendant Jane Doe #2, ARNP MH is a citizen residing in the State of Wisconsin. Defendant Jane Doe #2 was a psychiatric nurse practitioner at the Manitowoc County Jail and an employee of Advanced Correctional Healthcare, Inc. during the relevant time period. In that role she was responsible for the health and welfare of inmates confined in the jail, including Barbuto.

14. Defendant Jane Doe #3, LPN is a citizen residing in the State of Wisconsin. Defendant Jane Doe #3 was an LPN at the Milwaukee County Jail and an employee of Advanced Correctional Healthcare, Inc. during the relevant time period. In that role, she was responsible for the health and welfare of inmates confined in the jail, including Barbuto.

15. All individual Advanced defendants named above were acting under color of state law during the relevant time period and are sued in their individual capacities.

16. Defendant Kevin Mueller, is a citizen residing in the State of Wisconsin. Defendant Kevin Mueller is employed at the Manitowoc County Corrections Department through the Wisconsin Department of Corrections and was responsible for overseeing and enforcing Plaintiff's conditions of probation.

17. Defendant Elizabeth Rekowski is a citizen residing in the State of Wisconsin. Defendant Elizabeth Rekowski is employed at the Manitowoc County Corrections Department through the Wisconsin Department of Corrections and was responsible for overseeing and enforcing Plaintiff's conditions of probation.

**C.** **FACTS**

18. Barbuto is a legally incompetent adult diagnosed with autism, bipolar disorder, anxiety disorder and self-harm. These diagnoses required Barbuto to be placed on a daily regimen of Lithium treatment along with his other medications.

19. Barbuto suffers serious medical issues including liver disease and gout.

20. On May 28, 2019, Barbuto's legal guardian, Plaintiff McCarthy, spoke with Defendants Mueller and Rekowski, in person and in the presence of Barbuto's criminal defense counsel John Bilka, informing them of Barbuto's active case of C-Diff. (also known as *Clostridioides difficile* or C. difficile) which is a germ (bacterium) that causes diarrhea and colitis (an inflammation of the colon). McCarthy further notified the Defendants of the fact Barbuto had a bottle of, and prescription for, Vancomycin from his private physician. McCarthy further

explained to Defendants Mueller and Rekowski that Barbuto met the criteria for inpatient psychiatric treatment; however, Defendants Meuller and Rekowski disregarded that fact and had Barbuto arrested and taken to the Manitowoc County jail.

21. On May 29, 2019, Barbuto's legal guardian, Plaintiff Patricia McCarty, met, in person, with Defendants Daniel Hartwig and Lieutenant Brixius to discuss Barbuto's medical issues and to notify them that he was diagnosed with C-Diff and provided a bottle of Vancomycin that had been prescribed to Barbuto.

22. Rather than giving Barbuto the prescribed medication, Defendant Ronquillo-Horton withheld the medication because Barbuto's C-Diff infection allegedly could not be detected in the odor of the stool. When the legal guardian questioned this reasoning, Defendant Hartwig reiterated that a C-Diff infection could allegedly be detected in the "odor" of stool without other medical evaluation, and because there was no odor, he could not have the medication. Barbuto did not get any treatment for his C-Diff infection at that time.

23. A few days later, on June 1, 2019, Barbuto was committed to the Winnebago Mental Health Institute after attempting to self-harm. His self-harm attempt was serious enough that Barbuto was immediately committed to a mental health institute.

24. Defendant Ronquillo-Horton did not notify staff at the Winnebago Mental

Health Institute that Barbuto was diagnosed with a C-Diff infection, so no one at the mental health institute gave him the Vancomycin prescription either.

25.  About two weeks later, on June 12, 2019, Barbuto was released from the Winnebago Mental Health Institute and returned to the jail.

26.  On June 14, 2019, Barbuto tried to hang himself and was immediately placed in solitary confinement at the jail.  McCarthy was not notified of this fact by jail staff, medical staff or social workers even though she was Barbuto's legal guardian.

27.  Despite the change in Barbuto's mental health, Barbuto did not receive any mental health care at the jail following his attempt to hang himself.

28.  When the legal guardian questioned this decision, she was told that the Winnebago Mental Health Institute had recently concluded that he was "ok to be in jail."

29.  While in solitary confinement, Barbuto's C-Diff infection was not being treated, so he had extreme diarrhea and dehydration. But Barbuto could not purchase extra fluids from the canteen (such as clear sodas and juices), and he was limited to water from the faucet. Because of this fact, Barbuto became too weak to get off his bed to get water from the cell faucet.

30.  Barbuto's legal guardian asked Defendant Hartwig for a medical exception to provide Barbuto with more fluids while in solitary, but Hartwig responded that a cup

and faucet were adequate for hydration. Meanwhile, Barbuto continued to take a strong lithium medication for his other medical and psychological issues.

31.  On June 21, 2019, three weeks after arriving at MCJ, Defendant Ronquillo-Horton decided to properly evaluate Barbuto's C-Diff infection. Rather than give Barbuto the Vancomycin that had already been prescribed (and already in her possession), Defendant Ronquillo-Horton ordered an ineffective antibiotic that exacerbated Barbuto's diarrhea and caused extreme dehydration.

32.  Some time after the averments in paragraph 32 above, Barbuto reported that he believed he had lithium toxicity from taking his lithium medication while dehydrated. He explained he was dizzy and confused. These symptoms were ignored for the next three days.

33.  On June 24, 2019, Barbuto was sent to Holy Family Hospital for lab work. The lab results showed toxic levels of lithium that were four times the normal amount.

34.  A lithium level of 1.2 requires an I.V., ( The treatment serum level range is 0.8-1.2 mmol/L, but Lithium levels above 1.2 mmol/L can be toxic and **a level above 2.0 mmol/L is potentially fatal**), and his level of **4.4** required immediate dialysis. Instead of being immediately taken to a local hospital, however, Barbuto remained at the jail and Defendant Ronquillo-Horton ordered Gatorade and reported that Barbuto "could refuse the lithium" if he believed he had lithium toxicity.

35. Because Barbuto is legally incompetent, he could not easily reject medication. Furthermore, Defendant Ronquillo-Horton's treatment plan indicated Barbuto was to restart the lithium regimen within three (3) days. Had that occurred it most would have proved fatal to Barbuto.

36. The lithium toxicity made Barbuto dizzy and confused so he could not get up to get more water from the faucet, making him more dehydrated.

37. Three days later, on June 27, 2019, a nurse from an outside clinic called the jail and instructed medical staff to immediately take Barbuto to the emergency room due to lithium toxicity.

38. Defendant Ronquillo-Horton ignored the recommendation and, with the help of Brixius, turned away the ambulance that was sent that day.

39. Barbuto had increased tremors, was confused, and was unable to take food or fluid. Based upon the legal guardian, McCarthy, discovering Barbuto's condition, she felt Barbuto was in a dire and dangerous condition and called an ambulance to the facility in hopes of getting qualified emergency care rendered to Barbuto.

40. At one juncture during his incarceration at the Manitowoc County Jail, video evidence shows Barbuto was removed from his solitary confinement cell and dragged by jail staff from one cell to another without a stretcher or gurney, dragging him across the floor like a deer carcass with urine leaking from the adult diapers he uses to control incontinence.

41. On June 28, 2019, Barbuto was taken to a local hospital. The local hospital immediately transferred him to St. Vincent Hospital in Green Bay because he needed 24-hour dialysis, which was not available at the original hospital. Barbuto remained in the intensive care unit at the hospital receiving 24-hour dialysis until July 3, 2019. Barbuto was told that he could have died from the lithium toxicity.

42. Barbuto has had a long recovery period following release from Holy Family Memorial Hospital.

43. Barbuto has since had difficulty speaking, difficulty moving, difficulty remembering things, and mental distress as well as kidney dysfunction.

44. While these incidents occurred, Barbuto's legal guardian was zealously attempting to communicate with jail staff regarding Barbuto's medical care. Defendant Brixius, in consultation with Defendant Hartwig and Defendant Ronquillo-Horton, stymied her at every opportunity.

45. In addition to withholding information about Barbuto's attempt to hang himself and his toxic lab results, Brixius took active measures to prevent information from getting to the legal guardian and Barbuto's outside medical providers.

46. Defendant Brixius "blacked out" notes in Barbuto's jail and medical file from June 14, June 18, and June 25.

47. Defendant Brixius sent an email to her subordinates instructing them to "not share anything about what [Barbuto] is doing or his behavior;" and on June 18 she told the legal guardian "not to call so often."

48. Defendants Mueller and Rekowski were also aware of Barbuto's unique and extensive medical issues, including the C-Diff infection. Prior to Barbuto's incarceration at MCJ, the legal guardian gave Mueller a letter from a psychiatrist stating that "further incarceration would be harmful for [Barbuto] and that they should seek other options". Barbuto's criminal defense attorney then provided a lengthy written outline of other forms of incarceration that would "have an appropriate consequence legally while still meeting his medical needs".

49. Barbuto's criminal defense attorney contacted DOC headquarters in Madison and got approval that the alternative forms of incarceration noted in the outline were "acceptable." On the morning of May 29, 2019, Barbuto's legal guardian discussed the psychiatrist's letter, along with the alternatives outlined, with both Mueller and Rekowski, but they decided to send Barbuto to MCJ anyway without any plan in place to handle his extensive medical and mental health issues.

50. Defendant Rekowski emailed Defendant Brixius to tell her that Barbuto had a host of medical and mental health needs, and Defendant Brixius sent an email back "expressing concerns about being able to meet [Barbuto's] needs" at the jail.

51. Barbuto was sent to MCJ with no plan in place to handle his extensive medical needs. Defendant Rekowski, like Defendant Brixius, told Barbuto's legal guardian that neither she nor his criminal defense attorney were welcome to attend parole meetings with Barbuto. Defendant Rekowski maintained her position even after a DOC official wrote to her indicating that the legal guardian was legally required to attend meetings and receive information about Barbuto.

52. There was at least one meeting at the Rodger's Memorial Hospital that Barbuto had with Defendant Rekowski without his legal guardian or criminal defense attorney, even after Defendant Rekowski was notified that a legal guardian was required to be present. This encounter was in direct defiance of Court Commissioner Patricia Koppa's clear and specific letter indicating Barbuto's guardian needed to be present at all meetings.

53. Defendant _____ Campbell, while acting in his capacity as a sergeant in the Manitowoc County Jail during the relevant time period, supervised correctional officers and had a duty to ensure that jail conditions and the treatment of Barbuto complied with the United States Constitution and other federal, state, and local laws, as well as written jail policies. His duties involved inspecting the jail's segregation unit (1R) one or more times between June 14 and June 28, 2019. Defendant Campbell knew or should have known that the care, custody and control of Barbuto's person by subordinate jail staff and correctional officers was subpar, at best, was

inadequate and far below minimum standards. Defendant Campbell either condoned such negative treatment of Barbuto or otherwise turned a blind eye to same.

54. Defendant Campbell knew or should have known the written policies governing conditions at the Manitowoc County Jail required staff to provide inmates with 24-hour access to water. Barbuto was suffering from severe mental health episodes, wearing an adult diaper due to his inability to ambulate and was bedridden as his physical health deteriorated due to the increasing toxic levels of lithium accumulating in his body. This fact alone was evidence enough that Defendant Campbell should have been more proactive in getting Barbuto the physical and mental health necessary to keep him from self-harm and harm due to neglect by jail staff. Manitowoc County also engaged in a widespread pattern, practice, or custom of withholding necessary care from detainees with serious medical and mental health needs, including those suffering from mental illness, dehydration, malnourishment, diabetes, high blood pressure, and other serious conditions.

55. At all times material to this case, Defendants Hartwig, Brixius and Campbell, and other policymakers were aware of the systemic deficiencies at the Manitowoc County jail and failed and/or refused to correct these deficiencies. The Defendants had the authority and duty to rectify these deficiencies. It was foreseeable that the failure to do so would cause harm to inmates, including Barbuto, but they chose not

to remedy the systemic deficiencies. This deliberate inaction caused the unnecessary suffering and the near fatal lithium poisoning of Barbuto.

56. Defendant Manitowoc County failed to adequately train and/or supervise its personnel and contract providers on complying with constitutional requirements pertaining to inmate medical and mental health care, food, water, and humane conditions of confinement, as well as the proper way to monitor inmates in solitary confinement. The County failed to provide training on managing, monitoring, and responding to detainees in mental health crisis, such as an individual suffering from an acute episode related to bipolar disorder. The need for this training was obvious, and it was foreseeable that the County's choice not to provide such training would cause serious harm to inmates like Barbuto.

57. Defendant Manitowoc County, Defendants Hartwig, Brixius and Campbell delegated final policy making authority regarding jail healthcare to Defendant Advanced. Despite this, the County, Defendants Hartwig, Brixius and Campbell had a continuing, non-delegable duty to ensure that its corporate policymaker was fulfilling its constitutional duties to detainees.

58. Manitowoc County adopted and ratified the policies, customs, and practices of Defendant Advanced as its own. As such, the County is liable for any unconstitutional corporate policies, customs, or practices that resulted in harm to any

detainees in the jail, including those that caused the lithium poisoning and near fatal lithium toxicity levels of Barbuto.

59. It was foreseeable that such policies, customs, and practices would put the lives of Manitowoc County Jail detainees at risk, and such policies and customs caused and/or substantially contributed to the near fatal lithium toxicity and lithium poisoning of Barbuto.

60. Manitowoc County knew that the above-described policies, practices, and customs posed a substantial risk of serious harm to detainees like Barbuto, and it was obvious that such harm would occur. Nevertheless, the County chose not to take reasonable steps to alleviate those risks.

61. There is an affirmative causal link between the policies, practices, and customs described in this complaint and Barbuto's suffering and harm.

62. The actions and inactions of Manitowoc County and its Sheriff's Office were committed under color of state law and were the direct and proximate cause of Barbuto's damages, including his pain and suffering and mental anguish.

**D.   Additional Allegations Regarding Advanced, Defendants Ronquillo-Horton, Schuette, Jane Does  #1, #2 and #3**

63. Defendant Advanced permitted to exist a widespread pattern, practice, or custom of unconstitutional conduct toward persons incarcerated at the Manitowoc County

Jail, including failing to provide necessary care to inmates in segregation with serious medical and mental health needs.

64. By the time of Barbuto's detention, there had been numerous instances in the Manitowoc County Jail (and in other correctional facilities where Advanced operated) of inmates being denied prescription medication and other needed medical care by Advanced and its employees. Failing to conduct medical and mental health tests was commonplace, even in the face of physician orders to conducts such checks and tests.

65. Advanced's failure to deliver needed medical care to Barbuto was motivated by constitutionally impermissible profit-driven reasons. The company had a widespread policy, practice, and custom of budgeting and spending inadequate amounts on jail medical care to make higher profits on its contract. It was foreseeable that the insufficient budgeting and spending would cause harm to detainees in need of medical care, and such conduct caused or substantially contributed to Barbuto's unnecessary pain, suffering, and mental anguish.

66. Advanced also had a widespread pattern, practice, and custom of failing to properly monitor inmates with serious medical or mental health needs, particularly those in the segregation unit.

67. Advanced failed to adequately train its personnel to recognize and respond to the serious medical needs of inmates, particularly those with mental illness. This was

evident, for example, in the practice of ignoring the need for physician-ordered medical monitoring when mentally ill inmates would "refuse" such monitoring as a result of their impaired mental state or inability to consent. The need for this training was obvious because Advanced hired medical staff with little or no correctional-medical experience, and it was foreseeable that the lack of such training would cause harm to inmates.

68. Advanced also failed to train its nursing staff on how to conduct proper medical examinations, including the need to conduct blood and urine tests where indicated for issues such as lithium levels in inmates such as Barbuto. The need for this training was obvious, and it was foreseeable that such training deficiencies would cause harm to inmates.

69. In addition to the healthcare deficiencies identified above, Advanced's administrative leadership and nursing leadership failed and/or refused to maintain adequate employment of registered nurses and numerous vacancies in licensed practical nurse and nurse practitioner positions. Furthermore, the availability of psychiatric care was, at best, poorly provided and poorly administered resulting in problems with regard to mental health deficiency of prescribers and adequate presence of psychiatric leadership.

70. Defendant Ronquillo-Horton was aware of Advanced's systemic deficiencies and lack of compliance with Department of Corrections policies. She had the

authority and duty to rectify these deficiencies. It was foreseeable that the failure to do so would cause harm to inmates, including Barbuto, but she chose not to remedy them. This deliberate inaction caused the unnecessary pain, suffering and mental anguish of Barbuto.

71. Defendant Ronquillo-Horton also had a duty to oversee her subordinates and ensure compliance with medical standards of care. She either actively participated in the sub-standard care described in this complaint, or she acquiesced in the conduct by personally directing it, tacitly authorizing it, or otherwise failing to train or supervise her subordinates. It was foreseeable that these actions and inactions would cause serious harm to detainees, including Barbuto, and in fact they caused his unnecessary pain, suffering and mental anguish.

72. The corporate policies, practices, and customs described above were a moving force behind Barbuto's pain, suffering and mental anguish and the constitutional violations alleged in this complaint.

73. Defendant Advanced ratified the unconstitutional conduct of its employees and agents with respect to the mistreatment of Barbuto. Despite clear evidence of unconstitutional misconduct, including the failure to treat Barbuto's severe mental health needs and potential video evidence of Advanced's employees failing to conduct mandated checks, Advanced tacitly condoned these deficient actions by

failing to adequately investigate incidents such as described in this complaint as it relates to Barbuto and failing to discipline the responsible healthcare providers.

### E. Defendant Advanced Correctional Healthcare, Inc.

The foregoing events are the result of policies and practices instituted by the Defendants which prioritize low costs for jailers and profits for Advanced, at the expense of the health and lives of people who are detained in jails serviced by Advanced, including Manitowoc County inmates.

74. Advanced is a national provider of jail medical care. Its business model is to increase the volume of its sales by underbidding the competition and implementing severe cost control measures, the necessary result is unnecessary suffering of people detained at the jail.

75. The Advanced CEO, for example, has explained to potential customers that Advanced keeps costs to the customers down by reducing visits to hospitals. This, the CEO explained, kept its customers happy and helped Advanced increase its profits by allowing it to expand its business.

76. Advanced is able to implement such a scheme because jury verdicts from cases involving medical misconduct in jails and prisons are typically a fraction of the verdicts for comparable misconduct in the free world, meaning that Advanced can more easily accommodate liability claims in its business model.

77. Advanced indemnifies its jail-customers, like Manitowoc County, through substantial insurance coverage, and as a result Advanced customers, including Manitowoc County, are willing to hire companies like Advanced with poor track records in providing appropriate medical care, and they have little financial incentive to address deficiencies in the care provided at the jail.

78. In addition to these financial arrangements, Advanced implements its cost control measures by training its employees to provide less care to detainees and by pressuring those employees to provide less care.

80. When Advanced hires a new healthcare practitioner, the practitioner must attend a training session regarding the appropriate manner in which to provide medical care to people who are detained in jail. All new hires across the country are flown to Advanced headquarters for this multiple-day training.

80. At the outset of the training, Advanced trains its medical staff to believe that people who are detained in a jail are different than people in the free world because, whereas people in the free world seek healthcare because they have legitimate medical needs that require attention, people in jail seek healthcare in order to be comfortable, because they are merely anxious, and for similar trivial and illegitimate reasons.

81. Advanced trains its practitioners to ignore or discount the medical concerns identified by persons in jails as things a person "wants" rather than legitimate

medical needs, and it emphasizes that jail is "not a health spa," such that jail staff can ignore many medical concerns raised by the detainees housed there. Trainings of this sort are repeatedly provided alike to Advanced employees and correctional staff at facilities serviced by Advanced.

82. In addition to training, Advanced and its customers apply pressure on Advanced employees—even nominally independent practitioners—to cut back on the quality of care provided to jail detainees if such care is likely to increase outside care or staffing costs.

83. Mistraining its employees, pressuring them not to provide medical care they believe is clinically necessary, and delaying the provision of care and medication in hopes a detainee is transferred out are all tactics that Advanced uses to control its clients' costs and increase its own profits, as set forth above.

84. Advanced is indifferent to the danger that its practices will result in substandard or even catastrophic medical care.

85. Turning a blind eye to the inadequate and catastrophic instances of care that often result from its policies and practices allows Advanced to continue providing inadequate care to the detriment of people who find themselves in detention, like Barbuto.

23

# COUNT I-
## MONELL LIABILITY – DEFENDANT MANITOWOC COUNTY

86. Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

87. Upon information and belief, on and before June 24, 2019, Defendant Manitowoc County, with deliberate indifference to the rights of citizens, maintained and permitted a custom, pattern, and/or practice – by and through its agents and employees acting under color of law – of ignoring inmates' serious medical and psychological issues, needs and treatment in violation of the Constitutional rights of such detainees.

88. Upon information and belief, on and before June 24, 2019, Defendant Manitowoc County, with deliberate indifference to the rights of citizens, maintained and permitted a custom, pattern, and/or practice – by and through its agents and employees acting under color of law – of withholding necessary emergency and other medical treatment to detainees, including detainees that are expected to soon leave the custody of Manitowoc County, in violation of the Constitutional rights of such detainees.

89. As a direct and proximate result of such customs, patterns, and/or practices, Barbuto sustained injuries and damages as alleged herein.

90. Barbuto is therefore entitled to a money judgment against Defendant Manitowoc County pursuant to 42 U.S.C. § 1983 and *Monell v. Dept. of Social Services* for his compensatory damages and for punitive damages in amounts to be proven at trial.

## COUNT II-

## 42 U.S.C. §§ 12111–213, Title II OF THE AMERICANS WITH DISABILITIES ACT (ADA) CLAIM AGAINST MANITOWOC COUNTY

91. Plaintiff realleges the above paragraphs.

92. Plaintiff Barbuto is a qualified person under the ADA because he had a disability at all times material hereto.

93. Barbuto was disabled in that he suffered from anxiety, depression, bipolar disorder, schizophrenia, and suicidal ideation.

94. Barbuto's disabilities substantially limited major life activities, including breathing, concentrating, thinking, communicating, interacting with others, and caring for himself.

95. Defendants Ronquillo-Horton, Jane Does #1, #2, #3 and Manitowoc County failed to reasonably accommodate Barbuto or discriminated against Barbuto by denying him medication requests, failing to adequately monitor him, and denying him adequate mental health treatment.

96. Defendants Hartwig, Brixius, Campbell, Jane Does #1, #2, #3 and Manitowoc County's failure to reasonably accommodate Barbuto or their discrimination against Barbuto because of his disability effectively denied Barbuto's access to programs and activities in the Manitowoc County Jail.

97. Manitowoc County's policies, procedures, and rules that prevent an inmate from reporting health or suicide concerns about another inmate disproportionally affects disabled people, especially those with mental illnesses and those who are suicidal.

WHEREFORE, pursuant to the ADA, Plaintiff demands actual or compensatory damages against Defendant Manitowoc County, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT III-

### 29 U.S.C. §§ 794–94e, REHABILITATION ACT, CLAIM AGAINST MANITOWOC COUNTY

98. Plaintiff realleges the above paragraphs and incorporates same as if more fully set forth herein.

99. Defendants Manitowoc County receives federal funds.

100. Plaintiff Barbuto is a qualified person under the Rehabilitation Act because he had a disability.

101. Barbuto was disabled in that he suffered from anxiety, depression, bipolar disorder, autism. self-harm and suicidal ideations.

26

102. Barbuto's disabilities substantially limited major life activities, including breathing, concentrating, thinking, communicating, interacting with others, and caring for himself.

103. Defendants Manitowoc County failed to reasonably accommodate Barbuto or discriminated against Barbuto by denying him medication requests, failing to adequately monitor him, and denying his mental health treatment.

104. Manitowoc County's failure to reasonably accommodate Barbuto or their discrimination against Barbuto because of his disability effectively denied Barbuto's access to programs and activities in the Manitowoc County Jail.

105. Manitowoc County's policies, procedures, and rules that prevent an inmate from reporting health or suicide concerns about another inmate disproportionally affects disabled people, especially those with mental illnesses and those who are suicidal.

WHEREFORE, pursuant to the Rehabilitation Act, Plaintiff demands actual or compensatory damages against Defendant Manitowoc County, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT IV – STATE CLAIM
## MEDICAL MALPRACTICE/NEGLIGENCE AGAINST
## DEFENDANTS RONQUILLO-HORTON, JANE DOE #1, #2
## AND JANE DOE #3

106. Each Paragraph of this Complaint is incorporated as if fully stated herein.

107. On the date of the incident, Defendant Ronquill-Horton was a medical doctor licensed to practice in Wisconsin and employed as a jail doctor by Manitowoc County. Her examination of Barbuto, as alleged herein, occurred within the scope and course of her employment for Manitowoc County.

108. At all times material hereto, Jane Doe #1 was a Registered Nurse licensed to practice in Wisconsin and employed as such by Manitowoc County. Her examination, treatment and care, or lack thereof, with regard to Barbuto, occurred within the scope and course of her employment for Manitowoc County.

109. At all times material hereto, Jane Doe #2 was an advanced registered nurse practitioner with mental health emphasis licensed to practice in Wisconsin and employed as such by Manitowoc County. Her examination, treatment and care, or lack thereof, with regard to Barbuto, occurred within the scope and course of her employment for Manitowoc County.

110. At all times material hereto, Jane Doe #3 was a licensed practical nurse licensed to practice in Wisconsin and employed as such by Manitowoc County. Her examination, treatment and care, or lack thereof, occurred within the scope and course of her employment for Manitowoc County.

111. Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 failed to exercise that degree of care and skill which is exercised by the average practitioner in the class to which they belong, acting in the same or similar circumstances. *Sawyer v. Midelfort*,

227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis.2d 223, 229, 424 N.W.2d 159, 161B62 (1988).

112.   Defendants Ronquillo-Horton, Schuette, Jane Does #1, #2 and #3, jointly and severally, breached their duty owed to Barbuto which resulted in harm to Barbuto. *Paul v. Skemp*, 2001 WI 4217, 242 Wis.2d 507, 625 N.W.2d 860 (2001).

113.    Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 failed to use the required degree of skill exercised by an average respective medical professional, Barbuto was harmed and there is a causal connection between the Defendants' failure and Barbuto's harm. Wis. JI Civil 1023.

114.   Defendants' Ronquillo-Horton, Jane Does #1, #2 and #3 conduct fell below the standard of care by failing to treat Barbuto's psychological and medical issues sooner resulting in irreparable damage, intense pain and suffering and mental anguish. Particularly, Barbuto's attempted suicide, psychological emergency and unnecessary and completely avoidable lithium toxicity levels.

115.   Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 undertook and owed to Barbuto the duty to make reasonable efforts to care for him in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody and/or charge who are unable to care for themselves or seek medical attention while in custody.

116.  Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 negligently, carelessly and recklessly ignored Barbuto's immediate need for medical treatment resulting in significant, irreparable damage to Barbuto's physical and mental health and further inflicted cruel and unusual punishment upon Barbuto for which there existed no legitimate or reasonable penological interest and wholly against public policy.

117.  Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 negligently, recklessly ignored Barbuto's need for immediate diagnostic examination, physical examination and treatment and need for emergency intervention. Had Defendants, wholly under their authority, purview and ability, made proper reference to outside medical care and treatment for Barbuto, Barbuto would not have languished without adequate medical care and suffered needlessly, pain and suffering and mental anguish which continues to this date.

118. At all relevant times, Defendant Ronquillo-Horton was working within the scope and course of her employment for Defendant Manitowoc County. Defendant Manitowoc County is therefore vicariously liable to Barbuto under this Count on a supervisor liability basis. *Nanda v. Moss*, 412 F.3d 836, 842 (7th Cir. 2005) *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988) *Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000) *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) *Ghashiyah v. Frank*, No. 07-C-308, 2007 WL 5517455, at *2 (W.D. Wis. Aug. 1, 2007) *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) *Kentucky v.*

*Graham*, 473 U.S. 159 (1985) *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)

*Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) *Hildebrandt v. Ill. Dep't of Nat. Res*., 347 F.3d 1014, 1039 (7th Cir. 2003)

119. Barbuto is therefore entitled to a money judgment against Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 for his compensatory damages in an amount to be proven at trial.

## COUNT V- STATE CLAIM-INDEMNIFICATION
## WIS. STAT. 895.46 STATE AND POLITICAL SUBDIVISIONS
## THEREOF TO PAY JUDGMENTS TAKEN AGAINST OFFICERS
## AS TO DEFENDANTS

120. Each Paragraph of this Complaint is incorporated as if fully stated herein.

121. Wisconsin law, Wis. Stat. 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

122. Defendants Hartwig, Brixius, Ronquillo-Horton, Jane Does #1, #2 and #3 were acting in employee capacity of Manitowoc County Jail, who acted within the scope of their employment in committing the misconduct described herein.

## COUNT VI - INDEMNIFICATION CLAIM
## AGAINST MANITOWOC COUNTY SHERIFF'S DEPARTMENT

123. Each Paragraph of this Complaint is incorporated as if fully stated herein.

124.  In the event that any individual defendant is found liable for their actions performed in the course of their employment and/or agency, the  Manitowoc County Sheriff's Department, they must indemnify such employee for this verdict pursuant to Wisconsin Statute §180.0851.

WHEREFORE, Plaintiff demands that the Manitowoc County Sheriff's Department, pay any compensatory judgment against individual defendants who acted in the course of their employment and/or agency.

## COUNT VII- 42. U.S.C. §1983 – NEGLIGENT TRAINING AND SUPERVISION FOR DEFENDANTS MANITOWOC SHERIFF'S DEPARTMENT, HARTWIG, BRIXIUS AND CAMPBELL

125. Each Paragraph of this Complaint is incorporated as if fully stated herein.

126. Defendants Manitowoc County Sheriff's Department, Hartwig, Brixius and Campbell, as supervisory employees, acted with callous or reckless indifference to the rights of pretrial detainees, failed to properly supervise, instruct, and train correctional and medical staff in the recognition of inmates with serious medical needs, proper techniques and proper treatment of detainees' mental health needs.

127. Defendants were acting under the color of law, acted with deliberate indifference to Barbuto's life, medical needs, and rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

128. Defendants subjected Barbuto to these deprivations of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated.

129. Barbuto was permanently harmed as direct and proximate result of these Defendants actions.

## COUNT VIII
## SECTION 42. U.S.C. §1983 CLAIMS -DELIBERATE INDIFFERENCE ALL DEFENDANTS

130. Each Paragraph of this Complaint is incorporated as if fully stated herein.

131. Barbuto faced a substantial risk of serious harm; that the Defendants had actual knowledge of the risk of harm; and that the Defendants failed to take reasonable measures to abate it.

132. The Defendants' actions or inaction caused delay in Barbuto's treatment and that delay exacerbated Barbuto's injuries and unnecessarily prolonged pain and mental anguish.

133. Because of their deliberate indifference in failing to protect Barbuto from his known risk of committing suicide, the individual Defendants are responsible for having failed to protect Barbuto while he was in their care and/or custody from his known propensity to commit suicide and self-harm, in violation of Barbuto's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

134. Because of their deliberate indifference in addressing the known serious medical needs of Barbuto, the individual Defendants are responsible for having allowed Barbuto to suffer dehydration and lithium toxicity while in their care and/or custody, in violation of Barbuto's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

135. Because of Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 deliberate indifference in failing to ascertain and provide the medication which Barbuto had been prescribed and was taking prior to his incarceration Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 failure to address the need to either continue or replace such medication or to withdraw Barbuto from it gradually, Defendants Ronquillo-Horton, Jane Does #1, #2 and #3 were deliberately indifferent to Barbuto's serious medical needs in violation of Barbuto's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

136. Defendants Hartwig, Brixius, Campbell and Advanced maintained a policy, custom, or practice of deliberate indifference to the serious medical needs of inmates at the Manitowoc County Jail, including Barbuto, in violation of Barbuto's rights protected by the Eighth Amendment to the United States Constitution.

137. The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to willful, wanton and deliberate

indifference to the rights, health, safety, and welfare of Barbuto, and those similarly situated, resulting in the deprivation of their constitutional rights, pursuant to the 8th and 14thAmendments to the United States Constitution and the Due Process Clause to the United States Constitution.

138. The acts and omissions of the Defendants, as set forth above, violated the clearly established and well settled federal constitutional rights of the Plaintiffs, i.e., due process of law under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and under Articles I, Sections One and Six of the Wisconsin Constitution, because said Defendants were deliberately indifferent to the rights of Barbuto.

139. The Defendants, jointly and severally, knew that Barbuto was suffering from serious medical conditions and needed immediate treatment, but deliberately ignored the same by failing to provide proper medical care while Barbuto was in the Manitowoc County Jail, and by denying his, and his guardian's, repeated request for help and water/fluids.

140. The Defendants, jointly and severally, knew Barbuto needed medical and psychological care, or would suffer complications from dehydration and its subsequent side effect, including lethal lithium toxicity.

141. That the above named Defendants, jointly and severally, were deliberately indifferent to serious medical and psychological needs and intentionally deprived Barbuto of the required medical care and treatment, and acted with reckless disregard of Barbuto's serious medical and mental health conditions, which were clearly evident, in violation of his rights, privileges, and immunities as guaranteed by the United States Constitution, the Eighth Amendment, and Federal Statutes, including 42 U.S.C. § 1983.

142. That the conduct of the Defendants, jointly and severally, shocks the conscious, was reckless, and demonstrates a deliberate indifference to the consequences of their refusal to provide Barbuto with medical and mental health care while in the Manitowoc County Jail, and refusal to transport Barbuto to a hospital or other mental health facility and obtain appropriate care and treatment until his condition became extremely critical to the point of near fatal.

143. That the conduct of each Defendant, individually, and/or as employees and/or agents of Manitowoc County Jail and Advanced were committed while acting under color of state law, and deprived Barbuto of his clearly established rights, privileges, and immunities, in violation of the Due Process Clause and the 8th and 14th Amendments of the United States Constitution, and of 42 U.S.C. § 1983.

144. That the Defendants, jointly and severally, deprived Barbuto of his individual rights, as follows:

a. Deliberately failing to properly train the Manitowoc County Jail staff and Advanced, including medical personnel providing medical care to residents therein, to properly assess and determine when a resident is facing a medical emergency;

b. Deliberately ignoring Barbuto's immediate needs for medical treatment and mental health;

c. Deliberately failing to timely transport Barbuto to an appropriate hospital or mental health facility for immediate medical care and treatment;

d. Deliberately failing to seek appropriate medical attention for Barbuto's mental distress;

e. Deliberately failing to seek appropriate medical attention for dehydration intervention;

f. Deliberately failing to render medical care to a man succumbing to dehydration;

g. Deliberately failing to conduct timely mandated security/rounds;

h. Deliberately failing to conduct meaningful security checks/rounds;

i. Deliberately and willfully failing to notify appropriate doctors, nurses, and medical staff of Barbuto's perilous dehydration;

j. Deliberately failing to hire, train, maintain, and implement competent correctional staff at the Manitowoc County Jail;

k. Deliberately failing to hire, train, maintain, and implement competent medical staff at the Manitowoc County Jail;

l. Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the Manitowoc County Jail, thereby encouraging the wrongful acts and omissions complained of herein;

m. Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the Manitowoc County Jail, thereby encouraging the wrongful acts and omissions complained of herein;

n. Deliberately allowing a custom and/or practice at the Manitowoc County Jail of deliberately ignoring complaints of inmates or their need for medical or mental health attention;

o. Deliberately, willfully, and wantonly withholding required medical care to Barbuto when they had actual knowledge of Barbuto's serious medical and mental health conditions requiring immediate attention;

p. Deliberately, willfully, and wantonly failing to ensure that the Manitowoc County Jail was properly and adequately staffed; and,

q. Deliberately denied said inmate water to sustain health and life.

145. Manitowoc County, because of the above-alleged facts, engaged in a habit, practice and procedure jeopardizing the physical and mental health of inmates, which imposes liability upon them as an entity because the deliberate indifference was a proximate cause of the damages and injuries sustained by Barbuto.

146. The Defendants, jointly and severally, participated in deliberate indifference to the medical, psychological, and life-sustaining needs of Barbuto, and each Defendant, in particular, Hartwig, Brixius, Campbell, Ronquillo-Horton, Jane Does #1-3 and Advanced, directly participated in the deprivation of life-sustaining hydration, either by having knowledge that this practice was occurring, and/or directly participating in depriving said Barbuto of hydration, which contributed to his dehydration and resultant lithium toxicity.

147. Defendants Mueller and Rekowski, in their individual capacity, were deliberately indifferent to Barbuto's medical and mental health need by rejecting Barbuto's criminal defense counsel's and guardian's pleas to place Barbuto in an already approved mental health facility rather than having Barbuto taken into custody by law enforcement and transported to the Manitowoc County Jail to be incarcerated which led to the events complained of herein.

148. The Defendants' particular acts or inactions reflecting their deliberate indifference to Barbuto's medical and mental health needs are described with specificity in Paragraphs 18-73 of this Complaint and are incorporated into this Count as if more particularly set forth herein.

WHEREFORE, Plaintiff demands Compensatory damages from the Defendants Manitowoc County Sheriff's Department, Hartwig, Brixius, Campbell, Ronquillo-Horton, Jane Does #1-3, Mueller, Rekowski and Advanced. Barbuto

demands judgment against these defendants and further demands punitive damages, costs, and attorney's fees against the aforementioned Defendants and any additional relief this Court deems equitable and just.

## Jury Demand

147. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all counts herein and on any other counts which may hereafter be alleged.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully requests the Court grant the following relief:

1. Findings that Defendants violated Barbuto's Constitutional rights and are liable to him, jointly and severally, for damages and other monetary relief as alleged herein, pursuant to 42 U.S.C. § 1983;

2. Findings that Defendants Ronquillo-Horton, Jane Does #1, #2, #3 and Manitowoc County are liable to Barbuto for medical malpractice, and are liable to Barbuto, jointly and severally, for damages and other monetary relief as alleged herein;

3. An award and judgment for compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial and reasonably believed to exceed $1,000,000.00;

4. An award and judgment for punitive damages pursuant to federal law against Defendants, jointly and severally, in an amount to be determined at trial and reasonably believed to exceed $2,000,000.00;

5. Leave to amend the Complaint to allege punitive damages pursuant to state law;

6. Leave to amend the Complaint to add such additional defendants, allegations, and counts as the parties' disclosures and discovery may warrant;

7. An award to Barbuto for attorney fees pursuant to 42 U.S.C. §1988;

8. An award to Barbuto for the costs and expenses incurred in bringing this action, and for pre-judgment and post-judgment interest; and

9. Any further and additional relief the Court deems just and equitable.

RESPECTFULLY SUBMITTED,

Dated: November 2, 2022.

[electronically signed]

/s/ *Lonnie D. Story*_____
Lonnie D. Story, Esquire
Attorney for Plaintiff
STORY LAW FIRM, LLC
Wis. Bar #1121459
732 N. Halifax Avenue, #301
Daytona Beach, Florida 32118
(386) 492-5540
lstorylaw@gmail.com